UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION, )
)
Plaintiff, )
)
v. ) Case No.
)
PATRICK MURACA, )
NANOMOLECULARDX, LLC )
(a/k/a NMDX, LLC), and )
METABORX, LLC, )
)
Defendants. )

### DECLARATON OF MARK ALBERS

I, Mark Albers, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. Since October 2012, I have been employed as a Forensic Accountant with the Securities and Exchange Commission (the "Commission") in its Boston Regional Office. My duties include conducting investigations relating to potential violations of the federal securities laws.

2. My relevant professional experience includes approximately three years as an Auditor for Deloitte and Touche LLP and thirteen years as a Forensic Accountant for Deloitte Financial Advisory Services LLP, where I investigated financial statement fraud, asset misappropriation fraud, and bribery, corruption, and securities litigation cases.

3. I hold a Bachelor of Science in Business Administration with a concentration in Accounting from Michigan State University. I am a Certified Public Accountant in the state of Illinois and a Certified Fraud Examiner.

1

4. I make this declaration in support of the Plaintiff's Emergency Motion for a Temporary Restraining Order, Order Freezing Assets, and Order for Other Equitable Relief. The purpose of this declaration is to summarize certain information about banking activity in accounts under the control of Patrick J. Muraca ("Muraca"). I make this declaration based upon my personal knowledge, information, and belief, except where indicated.

5. The sources of my information and the bases of my belief are:

   a. documents the Commission staff obtained during the course of its investigation, including account opening documents, monthly account statements, login/logoff data and investor agreements, and for the period April 2016 through June 2017 the following:

      i. a bank account in the name of Patrick J. Muraca (the "Muraca Personal Account") held at Massachusetts-based BB&T Bank.

      ii. a bank account in the name of NanomolecularDX LLC (the "Nano account") held at Massachusetts-based Berkshire Bank.

      iii. a bank account in the name of MetaboRX LLC (the "Metabo account") held at Massachusetts-based Berkshire Bank.

   b. interview statements primarily from victim investors; and

   c. information provided to me by other members of the Commission staff.

6. Attached to this declaration are true and correct copies of certain documents produced to Commission staff in the course of this investigation. Exhibits are referenced as "Exh. ___."

**Background**

7. Muraca formed two purported pharmaceutical development startup companies,

NanoMolecularDX, LLC ("Nano") and MetaboRX, LLC ("Metabo") in 2016. Muraca has raised over $1 million in investor funds since April 2016. Bank records and other documents available to date show that Muraca has deposited the investor funds into two business accounts and one personal account.

**Funds Directed Toward Personal Use by Muraca**

8. At least fifteen individuals invested in Nano and/or Metabo between April 2016 through June 2017, with an investor depositing $80,000 into the Nano business account as recently as June 30, 2017. (From my review of the documents, it appears that Muraca sometimes refers to Nano as NMDX.) The staff of the Commission determined that the 15 investors had each invested in Nano and/or Metabo by reviewing documents evidencing the investments (*see e.g.,* Exh. #1), or from investor interviews conducted by the Commission and/or other federal investigative agencies.

9. From April 29, 2016, through June 30, 2017, these 15 investors contributed a total of $1,175,680 to fund Nano and Metabo, by wire or check, into one of the three following bank accounts:

    - Account #8177 at BB&T Bank – Muraca's personal account;
    - Account #6860 at Berkshire Bank – NanomolecularDX LLC business account (the "Nano Account");
    - Account #3147 at Berkshire Bank – MetaboRX LLC business account (the "Metabo account").

See Exh. #2.

10. Over that same time period from April 29, 2016, through June 30, 2017, Muraca directed at least $411,684 of investor funds to himself or toward his personal use,

3

including the following:

- $73,180 of investor funds that Muraca received directly into his personal account;

- $185,072 that Muraca transferred to his personal account via checks from the Nano ($161,549) and Metabo ($23,523) accounts; and,

- $153,432 that Muraca debited, via checks and debit card activity from the Nano ($125,732) and Metabo ($27,700) accounts for items including, but not limited to, groceries, automotive expenses, restaurants, fast-food, consumer goods (e.g., Cabela's, Coach, Sunglasses USA), ATM withdrawals and support of his fiancée's restaurant businesses.

*See* Exh. #3. Specific activity in Muraca's personal bank account, the Nano account and the Metabo account is described below.

***Certain Activity Occurring in the Muraca Personal Account***

11. Muraca opened individual bank account #8177 under his name at BB&T Bank on April 7, 2003. He was the only signatory on the account. Muraca received $73,180 in Nano and Metabo investor funds directly into his personal account as follows:

- On April 29, 2016 Investor #1 wired $10,000 to Muraca's personal account with the description of "Re: METABOX RX INVESTMENT";

- Between May 18 and May 25, 2016, Investor #2, who is Investor #1's father, sent three wires totaling $17,780 to Muraca's personal account with the description of "METABORX INVESTMENT";

- Between May 19 and May 24, 2016, Investor #3 sent four wires totaling $15,400 with description of "5,000 SHARES FOR [Investor #3] " and

4

INVESTING [Investor #3's wife]";

- On June 20, 2016, Investor #4 wired $10,000 to Muraca's personal account with no description, and Muraca sent that investor an investment confirmation; and,

- On June 20, 2016, Investor #5 wired $20,000 to Muraca's personal account with description of "NANOMOLECULARDX."

12. Transaction activity in Muraca's personal account indicates:

- that no funds were transferred out of Muraca's personal account into the Nano business account after receipt of the investor funds described in paragraph 11.

- Muraca wrote and deposited only two checks from his personal account into the Metabo account totaling $1,400 account after receipt of the investor funds described in paragraph 11, above.

- After receipt of the investor funds described in paragraph 11, above, Muraca used his personal bank account for various personal expenses, such as his mortgage (as well as his fiancée's mortgage and his mother's mortgage), gas, groceries, and other items.

- No obvious business expenses were incurred from Muraca's personal account in 2016 or 2017, in and around the time Nano and Metabo were formed and operating.

***Certain Activity Occurring in the Nano Account***

13. The Nano Account was opened on May 31, 2016, by a purported employee of Nano, with a deposit of $10. Muraca and the purported employee were listed as signers on

5

the account. Account login information indicates that Muraca was the only individual to access this account electronically online. In addition, Muraca stated in testimony obtained during the course of the Commission's investigation that he was and is the only person to hold a debit card tied to the account and the only person to initiate and approve transactions in the account.

14. The account began active use in July 2016 after a combined deposit of $60,000 of investor funds on July 5th and July 18, 2016. By August 8, 2016, these investor funds were spent and the account balance dropped to $771. Of the initial $60,000 investor funds received, Muraca distributed $35,843 to himself. On August 8, 2106, an additional $20,000 in investor funds was deposited. The same pattern of depositing investor funds and spending from the account until the balance was near or below zero continued into calendar year 2017.

15. Muraca frequently distributed funds to himself by writing checks to "Patrick Muraca" with the description of "expenses" in the memo line of the check.

16. In 2017 Muraca continued to spend investor funds on personal expenses, though he did make a significant asset purchase of $300,000 purportedly for Nano and/or Metabo from the bankruptcy proceedings of his prior company, Nuclea Biotechnologies Inc.

17. The chart below reflects the amount in the Nano account on the beginning dates of the periods indicated, reflects the amounts of investor funds deposited into the Nano account during that same period, and the amounts Muraca spent from the account for personal expenses or to make payments relating to his friends and family during that same period:

| Date Range | Nano account balance at begin date | Investor Funds deposited | Checks to Muraca/friends[1] or direct debits for personal expenses |
|---|---|---|---|
| 7/5/16 – 8/8/16 | $10 | $60,000 | $35,843 |
| 8/8/16 – 8/25/16 | $771 | $20,000 | $15,197 |
| 8/25/16 – 9/15/16 | $389 | $10,000 | $10,367 |
| 9/15/16 – 10/19/16 | $24 | $25,000 | $22,611 |
| 10/19/16 – 12/5/16 | $392[2] | $37,500 | $36,380 |
| 12/5/16 – 1/3/17 | ($264) | $50,000 | $30,242 |
| 1/3/17 – 2/17/17 | ($1,384) | $150,000 | $53,327 |
| 2/17/17 – 3/22/17 | $37,472* | $530,000 | $43,530 |
| 3/22/17 – 5/25/17 | $149,396* | $25,000 | $24,367 |
| 5/25/17 – 6/30/17 | $47,484* | $15,000 | $12,927 |
| 6/30/17 | $2,785 | $80,000 | unknown |

*Though the balance at the beginning of these periods was positive, these amounts consisted almost entirely of investor funds rolled over from the prior period. Documents available to date show that all but approximately $15,000 in credits to the Nano account were from investor funds.

*Certain Activity Occurring in the Metabo Account*

18. The Metabo account was opened on January 17, 2017 by a purported employee of Metabo. Muraca and the purported employee were listed as signers on the account.

19. From January 25, 2017, to January 27, 2017, a total of $100,000 in investor funds was deposited in the account from Investor #6 ($50,000) and Investor #7 ($50,000). Muraca transferred or spent at least $51,224 of those deposited funds for personal expenses or for payments related to his friends and family. No other amounts were deposited into the Metabo account from account opening to the present except for the $10 to initiate the account, and the aforementioned deposit of $1,400. On June 30, 2017, the balance in this account was overdrawn by ($191.44). The chart below reflects the investor deposits and personal expenditures in the Nano account since it

---

[1] "Friends" includes amounts to or for Muraca's mother, fiancée (including to support her restaurant business), and other friends or relatives.

[2] During this time period, Muraca also deposited $1,150 in cash and deposited a check for $8,500 from a consulting job he performed for an unrelated company. There was also a $1,513 credit in the account from a returned check. Thus, during this time period only $26,337 of the $37,500 Muraca spent on himself or affiliates, or on direct debits for personal expenses, was directly traceable to investor funds.

7

was opened:

| Date Range | Metabo account balance at begin date | Investor Funds deposited | Checks to Muraca/ affiliates or direct debits for personal expenses |
|---|---|---|---|
| 1/25/17-6/30/17 | $10 | $100,000 | $51,224 |
| 6/30/17 | ($191) | | |

**Details of Certain Nano and Metabo Business Account Spending**

*General*

20. Across both business accounts, expenses included charges at Walmart, the Apple Store, Big Y (a local supermarket chain), Cabelas (an outdoor hunting store), Coach (a purveyor of leather goods), Rite Aid, Sunglass Hut, Habana Premium Cigars, Home Depot, Berkshire Hill Coins and Estate Jewelry, and $12,630 in ATM withdrawals.

*Restaurant Operations*

21. Muraca directed a total of $65,109 as payments related to toward operating restaurants owned by his fiancée:

- Information available to the Commission shows that Muraca's fiancée was the owner of a restaurant business located in Lee, MA (the "Lee restaurant"), which closed at the end of January 2017.

- Muraca paid $47,904, collectively from the Nano and Metabo accounts, to suppliers and lessors of real estate housing the Lee restaurant, including four separate occasions between July 2016 and January 2017, when Muraca wrote checks in the amount of $5,000 each, from the Nano account, to pay the Lee restaurant's landlord, on or around the 20th of the month.

8

- In addition, Muraca spent another $56,335 from his personal account on operating expenses for the Lee restaurant; on several occasions Muraca wrote checks from his personal account in the amount of $5,000 to the Lee restaurant's landlord, also on or around the 20th of the month, with check memos such as, "Lease Payment" or "[Lee restaurant] Lease."

22. Muraca also directed funds from the Metabo account to a second restaurant venture owned and operated by his fiancée in Lenox, MA (the "Lenox restaurant").

    - During the course of the Commission's investigation, Muraca produced what purports to be a lease agreement, dated January 20, 2017, signed by Muraca and his fiancée, for premises located at 17 Franklin Street, in Lenox, MA, with the "landlord" described in the agreement as the same individual with the initials "A.G." The lease term was for 3 years beginning March 1, 2017, and the agreement calls for a $15,000 security deposit. The agreement also calls for $2,000 in monthly rent. The "lessor" identified in the agreement is "Ribosome, LLC." The agreement states that "[t]he premises may be used and occupied for the purpose of a restaurant."

    - In March, 2017, Muraca funded, via the Metabo account, a $15,000 official bank check issued to an individual with the initials "A.G."

    - On April 2017, Muraca paid $2,000 via check from the Metabo account to a Trust bearing the last name of the aforementioned individual with the initials "A.G."

    - As of July 30, 2017, the website of the Lenox restaurant identifies its

9

owner as Muraca's fiancée, and identifies the restaurant's address as 17 Franklin Street, Lenox, MA.

*Facebook Posts and Corresponding Bank Transactions*

23. Attached as Exh. #4 is a chart with one column consisting of the text of selected public Facebook postings on Muraca's personal page, and with a second column reflecting information about debits from the Nano and Metabo bank accounts that the Commission staff has identified as corresponding to the dates and details reflected in the Facebook postings.

**Current Cash Balances in the Accounts**

24. The last known cash balance in the respective personal and business accounts controlled by Muraca as of the date of this filing are as follows:

- Nano account #6860 - $75,962 (as of 6/30/2017).
- Metabo account #3147 - $(191) (as of 6/30/2017).
- Muraca personal account #8177 - $197 (as of 7/17/2017).

**Certain Representations By Muraca Regarding Nano and Metabo**

25. Attached as Exh. #5 is a document produced by Investor #4 to the Commission that purports to be an operating agreement for Nano. The document is signed by Muraca and states that his contribution to Nano is "Cash: $150,000." From my review of the Nano account, along with the other accounts under Muraca's control that I have reviewed, no such contribution was made to Nano by Muraca.

26. Attached as Exh. #6 is a document produced by Muraca to the Commission that purports to be an agreement, dated August 25, 2016, between Muraca and Nano, whereby Nano promised to pay Muraca $150,000 in exchange for "value received for

10

intellectual property." The contract is signed by Muraca on behalf of Nano as well as on behalf of himself. Multiple investors have stated that they were not aware of this agreement.

27. Attached as Exh. #7 is what purports to be an employment agreement between Nano and Muraca, dated April 25, 2016, signed by Muraca on behalf of himself as well as on behalf of Nano, as the "sole member" of Nano, stating that Muraca's salary is $4,000 per month, and that he is entitled to a "car allowance" of $1,000 per month.

28. In June 2016, Muraca sent at least one investor the "MetaboRX Executive Summary" attached as Exh. #8.

29. Attached as Exh. #9 is a Nano (which Muraca also calls "NMDX") investor update dated October 21, 2016.

30. Attached as Exh. #10 is a powerpoint presentation for MetaboRX that Muraca sent to at least seven investors, along with a shareholder update for Nano and Metabo, in November 4, 2016. Many of those investors invested funds after that date.

31. Attached as Exh. #11, is an email sent by Muraca on or around November 14, 2016, to least two investors stating that, thus far, he had "contributed [to Nano] $250,000 to purchase valuable distressed assets," and that Nano's revenues thus far were $50,000.

32. Attached as Exh. #12 is a Massachusetts Foreign LLC Application for Registration for Nano, dated March 31, 2017, signed by Patrick Muraca, and stating the general character of the business is: "serving food; restaurant."

33. Attached as Exh. #13 is a Massachusetts Foreign LLC Application for Registration for Metabo, dated April 3, 2017, signed by Patrick Muraca, and stating the general character of the business is: "serving food; restaurant."

34. Attached as Exh. #14 is an April 24, 2017 shareholder letter for Metabo that Muraca sent to at least one investor, noting that "MetaboRX is a preclinical stage biopharmaceuticals enterprise based on pioneering research in fatty acid metabolism."

35. Attached as Exh. #15 is a press release dated July 5, 2017, that Muraca sent to at least one investor.

36. Muraca stated the following in testimony given during the Commission investigation in April of 2017 ("Inv. Test."):

   a. That he had not put any money, funds, or assets into Nano, other than IP (intellectual property) that he "assigned" to the company. Inv. Test. 66:5-24.

   b. Muraca stated that he does not take a salary from Metabo and that there are "very minimal" operating costs for the company. Inv. Test. 90:23 – 91:24.

   c. Muraca stated that he had taken less than $40,000 in salary from Nano thus far. Inv. Test. 82:8-10.

   d. Muraca stated that he did not think there should be any personal expenses that would come out of the Nano account. Inv. Test. 148:1-5.

   e. Muraca stated that he had repaid himself for intellectual property and/or items he had purchased outside of the company before there were investments in it. Inv. Test. 80:2-7.

   f. Muraca stated that he was neither an owner nor manager of the Lee restaurant. Inv. Test. 13:24 – 14:25; 128:17-23.

Signed under the pains and penalties of perjury this 31st day of July 2017.

*Mark B. Albers*

Mark B. Albers

12

## Exhibit 1-15

(See attached pdf files)

13