UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                          )
SECURITIES AND EXCHANGE                  )
COMMISSION,                                           )
                                                          )
                    Plaintiff,                            )
                                                          )
          v.                                               )
                                                          )          Civil Action No.: 1:17-cv-11400-FDS
PATRICK MURACA,                                 )
NANOMOLECULARDX, LLC (a/k/a         )
NMDX, LLC), and METABORX, LLC        )
                                                          )
                    Defendants.                          )
_____ )

## NANOMOLECULARDX, LLC'S MEMORANDUM
## IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

ARGUMENT ..........................................................................................................................4

I.      STANDARD OF REVIEW. ...........................................................................................4

II.    THE SEC IS NOT ENTITLED TO SUMMARY JUDGMENT BASED ON
IMPUTATION OR SCIENTER ....................................................................................4

        A.  Mr. Muraca's Scienter Should Not Be Imputed to NMDX ...................................5

        B.  Summary Judgment Is Not Appropriate Even if Based on Mr. Muraca's
Scienter ...........................................................................................................7

III.   MR. MURACA'S CONVICTION DOES NOT BAR NMDX'S DEFENSE ...................9

        A.  The SEC Fails to Meet the Elements of Collateral Estoppel
in the First Instance ..........................................................................................9

        B.  Collateral Estoppel Does Not Apply Even if the Elements Are Met...................12

IV.   MATERIAL FACTS IN DISPUTE PREVENT SUMMARY JUDGMENT...................13

        A.  The SEC's Evidence is Insufficient to Prove Its Claims against NMDX.............13

        B.  The SEC's Cursory Calculations and Assumptions Raise Material
Issues of Fact.................................................................................................14

V.    THE SEC SEEKS AN UNWARRANTED PENALTY AGAINST NMDX ...................17

        A.  No Permanent Injunction Is Warranted against NMDX........................................17

        B.  NMDX Should Not Be Fined or Ordered to Disgorge Funds that It
Does Not Have................................................................................................17

                1.  Disgorgement Is Not Warranted on this Record..................................18

                2.  A Civil Penalty Is Not Warranted on this Record................................19

CONCLUSION.....................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases:</u>**

*Ashe v. Swenson*, 397 U.S. 436 (1970) ........................................................................................4

*Baena v. KPMG LLP*, 453 F.3d 1 (1st Cir. 2006)........................................................................6

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)......................................................................7

*Goguen ex rel. Estate of Goguen v. Textron, Inc.*, 234 F.R.D. 13 (D. Mass. 2006) .....................14

*Hefter Impact Techs., LLC v. Sport Maska, Inc.*, 2017 WL 3317411 (D. Mass. Aug. 3, 2017) (Saylor, J.).......................................................................................................................................4

*In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F. Supp. 2d 239 (D. Me. 2010) ............12

*Katsiaficas v. United States Cent. Intelligence Agency*, 2017 WL 2172437 (D. Mass. May 17, 2017) .............................................................................................................................................4

*Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5 (1st Cir. 1990) ...................................4

*O'Connor v. Steeves*, 994 F.2d 905 (1st Cir. 1993)......................................................................4

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)..........................................................12

*Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86 (1st Cir. 2007)......................................9

*Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756 (1st Cir. 2010).............................................9

*SEC v. Druffner*, 802 F. Supp. 2d 293 (D. Mass. 2011) .............................................................18

*SEC v. EagleEye Asset Mgmt.,* 975 F. Supp. 2d 151 (D. Mass. 2013) .......................................5, 7

*SEC v. Eiten*, 2014 WL 4965102 (D. Mass. Sept. 30, 2014).......................................................19

*SEC v. Esposito*, 2018 WL 2012688 (D. Mass. Apr. 30, 2018) ..................................................18

*SEC v. Ficken,* 546 F.3d 45 (1st Cir. 2008) ................................................................................15

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996).....................................................18

*SEC v. Mantria Corp.*, 2011 WL 3439348 (D. Colo. Aug. 5, 2011)..............................................6

*SEC v. Milligan*, 2007 WL 9724904 (E.D.N.Y. June 5, 2007)....................................................10

*SEC v. Milligan*, 436 F. App'x 1 (2d Cir. 2011)...........................................................................20

*SEC v. Metter*, 706 F. App'x 699 (2d Cir. 2017)........................................................................20

*SEC v. Sargent*, 329 F. 3d 34 (1st Cir. 2003)...............................................................................19

*SEC v. StratoComm Corp.*, 89 F. Supp. 3d 357 (N.D.N.Y. 2015)...............................................18

*SEC v. Syndicated Food Serv. Int'l, Inc.*, 2014 WL 2884578 (E.D.N.Y. Feb. 14, 2014)..............19

*Soroko v. Cadle Co.*, 2011 WL 4478486 (D. Mass. Sept. 23, 2011)............................................11

*United States v. Bajakajian,* 524 U.S. 321 (1998)........................................................................20

*Wechsler v. Steinberg*, 733 F.2d 1054 (2d Cir. 1984)...................................................................7

## Rules and Statutes:

Fed. R. Civ. P. 56..........................................................................................................................4

Fed. R. Evid. 802 & 1001 .............................................................................................................15

Defendant NanoMolecularDX, LLC ("NMDX") opposes the Securities and Exchange Commission's motion for summary judgment.

## INTRODUCTION

The United States Department of Justice ("DOJ") argued in Defendant Patrick Muraca's criminal trial that Mr. Muraca, NMDX's former CEO, misappropriated company funds for his personal use. He did so, according to the Government, to the detriment of NMDX's "real work" of developing cancer diagnostic tests. The Government claimed that the company and its work "suffered." The SEC seeks to adopt the findings of that case and to hold NMDX liable for what the Government blamed Mr. Muraca for, and penalize the investors whose interests it claims to defend. The SEC's claims against the company further harm NMDX and its investors, the vast majority of whom have reaffirmed their investments in NMDX.

Despite the fact that NMDX has removed Mr. Muraca as CEO and as a decision-maker, even suspending his equity's voting rights during this litigation, the SEC seeks to hold NMDX liable, based entirely on Mr. Muraca's actions. The SEC has admitted that it knows of no other person who has made material misrepresentations or omissions in violation of the securities laws at issue here. Nevertheless, the SEC asks the Court to order NMDX to disgorge funds that it claims Mr. Muraca took from NMDX, and to pay interest on the amounts taken from NMDX and MetaboRX. The SEC also asks the Court to fine NMDX to punish the "individual violator," although NMDX was a victim.

The Court should deny the SEC's motion. The SEC fails to carry its burden to show an absence of any dispute of material fact. Instead, the SEC attempts to bypass proving its claims and impute Mr. Muraca's conduct to NMDX and saddle NMDX with Mr. Muraca's criminal conviction via collateral estoppel. For example, the SEC makes no allegation that NMDX acted

with scienter independent of Mr. Muraca's alleged conduct.  The SEC also admits that Mr. Muraca was not acting "within the scope of his employment at NMDX" or "on behalf of NMDX" when "he used funds invested in NMDX for his personal benefit."  Any funds that Mr. Muraca used for his benefit – and not that of NMDX – cannot support imputing his conduct to NMDX.

There are also issues of material fact concerning whether Mr. Muraca acted with scienter, and the amount of funds that Mr. Muraca used for his personal benefit.  The SEC's accountant, Mark Albers, admitted that he failed to deduct certain expenses, and the SEC has invoked privilege to prevent him from explaining why he declined to account for salary or other remuneration to which Mr. Muraca was contractually entitled.  Mr. Albers has also admitted that he has no way to know whether the allegedly misused funds reflect business expenses.

Next, the SEC asks the Court to find that Mr. Muraca's conviction for wire fraud, based on Mr. Muraca's misuse of corporate funds for his benefit, proves that NMDX misappropriated its own money and defrauded itself and its investors.  This is illogical and does not comport with the record in the criminal case, where the Government portrayed NMDX as a victim.  The SEC attempts to apply collateral estoppel against NMDX, although it attended "only small portions of the trial," and does "not have a copy of the trial transcript."  Otherwise, the SEC would know that the Government argued that: (i) NMDX "suffered" from Mr. Muraca's misuse of funds; (ii) NMDX could not do its "real work" because "that money was being stolen"; and (iii) "Patrick Muraca stole from the businesses."  The jury did not make discrete findings, leaving the parties and the Court to infer the jury's findings.  But two prosecutors told the jury that NMDX was "not on trial."  The amount of restitution that the Department of Justice sought, and that the Court ordered, supports an inference that the verdict was based on losses to investors in MetaboRX, not

NMDX.  The Court should not transfer the verdict onto NMDX and should estop the SEC from contradicting the Government's positions.

For these reasons, the Court should not issue a permanent injunction, order disgorgement, or fine NMDX.  It defies logic, common sense, and the law to require NMDX to disgorge or pay a fine based on funds that Mr. Muraca allegedly took for his benefit.  NMDX is attempting to continue its work, which the Government described as "valuable efforts to develop diagnostic tests for cancer" and has removed Mr. Muraca from any role in the company.

This memorandum proceeds in five parts.

- *First*, NMDX addresses the standard of review.  Although familiar, as applied here, the standard of review requires that the Court evaluate the full record.  In light of the SEC's attempt to apply collateral estoppel, this would require that the Court consider the record developed in Mr. Muraca's criminal trial, which the SEC does not supply, because the jury in that case did not answer any special interrogatories.

- *Second*, NMDX explains that Mr. Muraca's actions are the only ones that could support the SEC's claims, and those actions, which the SEC admits were not done in the scope of Mr. Muraca's employment and not on behalf of NMDX, cannot be imputed to NMDX.  There are genuine issues of material fact concerning Mr. Muraca's scienter, which is an issue generally unsuitable for summary judgment.

- *Third*, it explains the myriad reasons why collateral estoppel against NMDX is not proper, including the issues that the SEC seeks to estop NMDX from litigating which were not litigated in Mr. Muraca's trial or essential to that judgment.  In fact, the Government expressly represented to the jury in that case that NMDX was <u>not on trial</u>.

- *Fourth*, it sets forth the genuine issues of material fact and undisputed facts that prevent the entry of summary judgment against NMDX for securities fraud.

- *Fifth*, the excessive remedies that the SEC seeks are inappropriate, even if summary judgment is granted.  A permanent injunction would be improper given NMDX's corrective efforts and the unlikely risk of further violations.  The Court should not order NMDX to disgorge or pay interest or a fine on Mr. Muraca's "ill-gotten" gains, which are not in NMDX's possession because Mr. Muraca supposedly spent it for his benefit.  Finally, NMDX should not be ordered to pay interest during the 11 month-stay.

For these reasons the Court should deny the SEC's motion.

## ARGUMENT

### I.  STANDARD OF REVIEW

A party seeking summary judgment must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of fact is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational fact-finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted); *see Hefter Impact Techs., LLC v. Sport Maska, Inc.*, 2017 WL 3317411, at *1 (D. Mass. Aug. 3, 2017) (Saylor, J.). "[T]he court indulges all reasonable inferences in favor of the nonmoving party." *Hefter Impact Techs., LLC*, 2017 WL at *1; *see O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). The Court must also review "the entire record." *Katsiaficas v. United States Cent. Intelligence Agency*, 2017 WL 2172437, at *3 (D. Mass. May 17, 2017). This is indispensable in light of the SEC's effort to bar litigation of issues determined in Mr. Muraca's criminal trial because the jury did not make discrete findings. *Ashe v. Swenson*, 397 U.S. 436, 444 (1970) (court may consider full record in prior case to decide "whether a rational jury could have grounded its verdict upon an issue other than that which the [moving party] seeks to foreclose from consideration."). The SEC's motion should be denied.

### II.  THE SEC IS NOT ENTITLED TO SUMMARY JUDGMENT BASED ON IMPUTATION OR SCIENTER

To prevail on its claims under Section 10(b) or 17(a), the SEC must prove that NMDX "(1) made a material misrepresentation or omission or otherwise engaged in fraudulent conduct;

4

(2) in connection with the purchase or sale of a security; and (3) with scienter."  Pl.'s Mem. in Supp. of  Its Mot. for Summ. J. ("Br.") 5.[1]

The SEC rests its entire case against NMDX on the theory that Mr. Muraca's actions and state of mind should be imputed to NMDX, the entity that the DOJ previously claimed was a victim of Mr. Muraca's actions.  Br. 8-10.  Imputation is not appropriate here because, as the SEC admits, Mr. Muraca was acting outside the scope of his authority and, therefore, not on behalf of NMDX, when he allegedly misappropriated company funds.  Even if the Court were to impute Mr. Muraca's actions onto NMDX, summary judgment would still not be appropriate, because there are material issues of fact surrounding whether both NMDX and Mr. Muraca acted with scienter.  In addition, there are significant issues of material fact related to the amounts that were allegedly raised and misappropriated by Mr. Muraca, which are addressed in Part IV of this Memorandum.

A.   <u>Mr. Muraca's Conduct Should Not Be Imputed to NMDX</u>

The SEC makes no argument that NMDX committed any violation of Section 17 or Section 10 independent of Mr. Muraca's actions.  *See* Br. 8; Resp. ¶¶ 5-15, 46.[2]  Instead, the SEC can only prevail against NMDX if it can impute Mr. Muraca's scienter onto NMDX, which the Government has previously argued was Mr. Muraca's victim.  Resp. ¶ 47-48 (Government argued that "so much" of NDMX's money "was being stolen by Patrick Muraca" and that "Patrick Muraca stole from the businesses before those investments even made it there.").

---

[1] Although certain claims under Section 17(a) can be based on negligence, the SEC bases its claims solely on Mr. Muraca's scienter.  *Id.*  Because the question of negligence is inherently a factual one, summary judgment would not be appropriate in any event.  *See SEC v. EagleEye Asset Mgmt.*, 975 F. Supp. 2d 151, 159 (D. Mass. 2013).

[2] In accordance with Local Rule 56.1 and in support of this memorandum and NMDX's Motion for Summary Judgment, NMDX filed and cites to its Response to Plaintiff's Statement of Undisputed Facts and Statement of Additional Facts that Require Denial of Plaintiff's Motion for Summary Judgment and Entry of Summary Judgment in NMDX's Favor ("Resp.").

However, the cases that the SEC cites in support of this theory confirm that imputation relies on the law of agency.  Br. 8-10.  Under agency law, imputation of an officer's actions is proper only when the actions were performed on behalf of or to advance the interests of the corporate entity.[3]  That is not the case here, where the SEC admits that Mr. Muraca was not acting "within the scope of his employment at NMDX" or "on behalf of NMDX" when "he used funds invested in NMDX for his personal benefit."  Resp. ¶ 56.

Having conceded that Mr. Muraca was acting outside of the scope of his employment with NMDX, the SEC cannot attempt to claim that NMDX benefited from his misrepresentations.  This is because the SEC, through Mr. Albers, has admitted that the difference between the total amount invested in NMDX and MetaboRX and its classification of non-business expenses exclusively reflects legitimate business expenses.  *Id.* ¶ 73.  This fact, combined with the fact that the vast majority of NMDX investors reaffirmed their investments, shows that NMDX conducts its business in a manner consistent with the investors' expectations – showing no misrepresentation outside of Muraca's misuse of funds.  *Id.* ¶¶ 63-64.  The SEC uses the investors for its own benefit as victims or villains as necessary.  But, the law converges with justice and common sense to ensure that NMDX, a victim of Mr. Muraca's improper actions, is not liable for those actions.

The SEC relies on a case that recognizes an "adverse interest" exception to imputing an officer's conduct to the company.  *Baena v. KPMG LLP*, 453 F.3d 1, 7 (1st Cir. 2006).  The exception applies "where the wrongdoing is done primarily for personal benefit of the officer and is 'adverse' to the interest of the company."  *Id.*  That exception applies squarely here, where the

---

[3] *See, e.g.*, *S.E.C. v. Mantria Corp.*, No. 09-CV-02676-CMA-MJW, 2011 WL 3439348, at *4 (D. Colo. Aug. 5, 2011) (imputation appropriate "for the fraudulent conduct engaged in <u>while in the course of the employment and while transacting corporate business</u>.") (emphasis added); *SEC v. Collyard*, 154 F. Supp. 3d 781, 795 (D. Minn. 2015) (business liable for action of agent acting within scope of employment).

Government has acknowledged that Mr. Muraca's conduct was adverse to NMDX.  Resp. ¶¶ 34-35 (NMDX's "valuable efforts to develop diagnostic tests for cancer . . . . couldn't get done because . . . . so much of that money was being stolen by Patrick Muraca.").  Under this exception, the Court should not impute Mr. Muraca's actions to NMDX.  The SEC's attempt to impute Mr. Muraca's conduct to NMDX takes victim-blaming to a new level.  There is no basis for imputation, and the SEC's motion should be denied.

> B.  <u>Summary Judgment Is Not Appropriate Even if Based on Mr. Muraca's Scienter</u>

Even if Mr. Muraca's conduct is imputed to NMDX, summary judgment is still not appropriate, because courts generally refrain from granting summary judgment on the issue of scienter.  "Issues of motive and intent are usually inappropriate for disposition on summary judgment." *Wechsler v. Steinberg*, 733 F.2d 1054, 1058 (2d Cir. 1984).  "Few things seem more appropriately the province of a jury than the inference of a defendant's mental state.  Without admissions by a defendant that he intended to defraud, it is hard to imagine a situation in which a court can grant offensive summary judgment where such scienter is a required element." *EagleEye Asset Mgmt.*, 975 F. Supp. 2d at 158-59 ("scienter is a mental state 'embracing [an] intent to deceive, manipulate, or defraud.'") (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976)).

In addition to this general prohibition, there are significant factual issues regarding whether Mr. Muraca's actions demonstrate an intent to defraud or sloppy business practices.  *See EagleEye Asset Mgmt.*, 975 F. Supp. 2d at 159 (no summary judgment where "jury reasonably could have concluded" that manager "did not intend to defraud" even if he was "extremely sloppy, took shortcuts . . . , and violated a slew of fiduciary duties.").  The "facts" that the SEC asserts to prove scienter all arise from the declaration of Mark Albers, an accountant for the SEC.  Dec. of Mark Albers ("Albers Decl.") (ECF No. 1-2).  *See* Resp. ¶¶ 10-15.  The Albers

Declaration is largely conclusory and lacks evidentiary value.  At most, it shows that Mr. Muraca claimed expenses, not that they were improper, or that Mr. Muraca intended to deceive.

The Albers Declaration contains a summary of information upon which the SEC bases its claims.  Mr. Albers explains that he has seen records that Mr. Muraca transferred a total of $161,549 in checks from NMDX into his personal account and debited $125,732 for items that Mr. Albers states were for items, "including groceries, automotive expenses, restaurants, fast-food, consumer goods (e.g., Cabela's, Coach, Sunglasses USA), ATM withdrawals, and support of his fiancée's restaurant businesses."  Albers Decl. ¶ 10; Resp. ¶ 12.  Mr. Albers also concludes that Mr. Muraca claimed expenses for "gas, groceries, and other items," and an unknown number of checks written to himself with a memo line stating "expenses."  Albers Decl. ¶¶ 12, 15.

This is not evidence sufficient to establish the requisite scienter.  It is not even sufficient to prove that the funds were misused.  Mr. Albers made no inquiry or determination as to whether any portion of the $161,549 was used for business expenses.  Resp. ¶ 32.  He also testified that he made no attempt to determine whether expenditures that he labeled "restaurant/food," "consumer goods," and "transfers to banks" were business expenses. Resp. ¶ 44.  Expenses for groceries could be for items used at work by employees, particularly at a place like NMDX, where the employees were a tight-knit group.  Resp. ¶¶ 49-50.  As to the Cabela's expense that the SEC cites as misconduct, there is evidence that some of that expense could have been for business purposes.  Resp. ¶¶ 51-52.[4]  Although the SEC has only sought discovery <u>after</u> filing its motion, if it had sought discovery previously, it might have learned that as Interim CEO of NMDX, Andrew Deck has also made legitimate business purchases at seemingly unorthodox retailers such as Dick's Sporting Goods (ice packs for shipping),

---

[4] Although these statements may be contradictory, they could reflect multiple items purchased from Cabela's.

Amazon.com (microcentrifuge tubes), and Home Depot.  As for gas, fast-food, and automotive expenses, there is evidence that Mr. Muraca travelled extensively for work.  Resp. ¶ 53.

The SEC's "evidence" indicates, at most, that Mr. Muraca charged items to NMDX, not that they were improper.  The motion should be denied.

## III.     MR. MURACA'S CONVICTION DOES NOT BAR NMDX'S DEFENSE

The SEC next attempts to sidestep its burden of proof by arguing that Mr. Muraca's conviction for wire fraud collaterally estops NMDX from litigating issues of fact and law, including whether <u>NMDX</u> diverted any "investors' money" and whether <u>NMDX's</u> "misconduct constituted fraud."  Br. 11.  The SEC seeks to deny NMDX its day in court on the basis that Mr. Muraca's conviction for wire fraud definitively proves that NMDX defrauded investors.  It does not.  The SEC has admitted that it lacks knowledge of what occurred or was decided at Mr. Muraca's criminal trial.  Resp. ¶ 58.  The SEC's argument is uninformed, contrary to the record, and contrary to the Government's arguments that NMDX engaged in "valuable efforts to develop diagnostic tests for cancer" that suffered due to Mr. Muraca's alleged conduct.  Resp. ¶ 24.

### A.     The SEC Fails to Meet the Elements of Collateral Estoppel in the First Instance

Issue preclusion, or collateral estoppel, "may be applied where '(1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment.'"  *Rodriguez-Garcia v. Miranda-Marin*, 610 F.3d 756, 770 (1st Cir. 2010) (quoting *Ramallo Bros. Printing, Inc. v. El Dia, Inc.*, 490 F.3d 86 (1st Cir. 2007)).  A party invoking collateral estoppel bears the burden to prove each element.  *Hoult v. Hoult*, 157 F.3d 29, 31-32 (1st Cir. 1998).  The SEC has not met its burden, and the jury's conclusion in the criminal trial must be discerned by granular inference upon review of the record in that case, because the jury made no specific factual findings.  *Id.*

9

*First*, the issues in this case are not the same as the issues in Mr. Muraca's criminal case. The current case claims that NMDX committed securities fraud, while the wire fraud count charged Mr. Muraca with "misappropriating funds for his personal use" and was silent as to NMDX.  Resp. ¶ 17.  Where a criminal conviction was for wire fraud, and the civil claim is for securities fraud "perfect symmetry is lacking then, at least on the legal front."  *SEC v. Milligan*, 2007 WL 9724904, at *3 (E.D.N.Y. June 5, 2007).  Although issue preclusion may be applied where there is factual symmetry, that does not exist here.

*Second*, no allegations of fraud by NMDX were litigated in Mr. Muraca's criminal trial. In fact, the Government characterized NMDX as a victim of Mr. Muraca, arguing that: (i) NMDX "suffered" as a direct result of the theft, Resp. ¶ 54; (ii) NMDX could not do its "real work" because "that money was being stolen by Patrick Muraca," *id.* ¶¶ 23-24, 55; and (iii) that "Patrick Muraca stole from the businesses," *id.* ¶ 66.  The SEC has admitted that the Government made such statements at trial.  *Id.* ¶ 57.  The SEC seeks to adopt the findings from that trial, but seeks to disavow the Government's arguments.  The Government, of which the SEC is a part, cannot have it both ways.

*Third*, NMDX was not convicted.  Resp. ¶ 18.  The determination of whether NMDX made any material misrepresentations or omissions was not essential to the judgment against Mr. Muraca.  Rather, the Government repeatedly described NMDX as a victim to support its case against Mr. Muraca.  Resp. ¶ 57.  The Government also assured the jury that its verdict <u>did not apply to NMDX</u>.  In the summation, the Government told the jury, "NMDX and Metabo and the science and technology behind those businesses are not on trial here; Patrick Muraca is." Resp. ¶ 59.  During the Government's rebuttal on closing, it again told the jury to

"remember . . . . [t]hat the companies, NMDX and Metabo, they are not on trial." Resp. ¶ 60. The SEC cannot now reverse course.

Moreover, following Mr. Muraca's conviction, the DOJ sought restitution on the express basis that, "The proposed restitution amount is based on the $117,780 that victims invested in Metabo . . . , plus the $15,000 another victim, Leif Hamoe, invested in NMDX." That is, the only "loss" that the DOJ cited as to NMDX's interests was $15,000 to one possible investor who did not have an opportunity to rescind his investment. Resp. ¶ 65. This supports an inference – which must be drawn in NMDX's favor – that the jury's verdict in the criminal case focused on MetaboRX, not NMDX.

The SEC's only argument that estoppel should be invoked against NMDX is that NMDX and Mr. Muraca have a "sufficient legal identity," despite its admission that Mr. Muraca was acting outside the scope of his employment and not on NMDX's behalf when he allegedly misused funds. Br. 11 (quoting *Soroko v. Cadle Co.*, 2011 WL 4478486, at *7 (D. Mass. Sept. 23, 2011)). The *Soroko* case cited by the SEC is factually distinguishable. The estopped parties in *Soroko* were parties to the prior proceeding. *Id.* at *8. That is not the case here. The facts here do not present the type of "very close relationship bordering on complete identity of interest" that is required to impute liability to NMDX. *Id.* at *7; Resp. ¶ 56. The SEC cites no authority, nor can NMDX locate any, that finds "complete identity of interest" between someone with a criminal conviction and his alleged victim. The Court should deny the SEC's motion and should apply the doctrine of judicial estoppel to prevent the SEC from taking positions that are inconsistent with those taken by the Government during the criminal trial.[5]

---

[5] As explained in NMDX's motion for summary judgment, the Court should apply judicial estoppel to prevent the SEC from arguing inconsistently with the positions taken by the Government in Mr. Muraca's criminal trial.

B.     Collateral Estoppel Does Not Apply Even if the Elements Are Met.

Even if collateral estoppel would otherwise apply, additional policy considerations apply where the estoppel is nonmutual and on an offensive basis.  In such cases, "these traditional elements are necessary but not sufficient" as "offensive issue preclusion raises additional policy concerns."  *In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F. Supp. 2d 239, 243 (D. Me. 2010); *see also Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979).

Two of those concerns caution against applying preclusion to NMDX here.  *First*, "offensive issue preclusion does not necessarily promote judicial economy; plaintiffs are incentivized to 'wait and see' because they can 'rely on a previous judgment against a defendant but will not be bound by that judgment if the defendant wins.'"  *In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F.Supp.2d at 243 (quoting *Parklane Hosiery Co.*, 439 U.S. at 330). That is exactly what happened here:  the SEC waited until the criminal trial concluded and then rushed to apply that verdict in this case, seeking to truncate discovery, without an understanding of the facts and issues litigated and how they were adjudicated vis-à-vis NMDX or MetaboRX. Indeed, the Government stayed the case, over NMDX's objection, to allow the criminal trial to proceed.  To reward that delay by estopping NMDX from presenting a defense would reward that gamesmanship contrary to the principles set forth in *Parklane Hosiery Co.* and its progeny.

*Second*, offensive issue preclusion may be unfair where, as here, "'the second action affords the defendant procedural opportunities unavailable in the first action that could readily cause a different result.'" *In re Light Cigarettes Mktg. Sales Practices Litig.*, 691 F.Supp.2d at 244 (quoting *Parklane Hosiery Co.*, 439 U.S. at 331).  NMDX was not a party to the prior case and had no opportunity to present evidence, cross-examine witnesses, and had no incentive to do so because it was not on trial.  Collateral estoppel would deny NMDX its day in court.

12

## IV.    MATERIAL FACTS IN DISPUTE PREVENT SUMMARY JUDGMENT.

### A.    The SEC's Evidence is Insufficient to Prove Its Claims against NMDX

Although the SEC does not separate its argument as to each discrete defendant, it appears that the SEC argues that material misrepresentation concerning NMDX consists entirely of a statement from NMDX's website and four statements that Mr. Muraca made to investors. Resp. ¶¶ 5, 7-10.  These statements raise material issues of fact as to whether any misrepresentations or omissions concerned NMDX, or whether there were any misrepresentations or omissions that could be attributable or imputed to NMDX.

The statement from NMDX's website regards the company's focus on early detection kits for cancer and endocrinology.  Br. 7; Resp. ¶ 5.  The SEC makes no claim that this statement was false.  Br. 7.  In fact, there is ample evidence that it is true, including evidence that NMDX purchased kits from Nuclea Biotechnologies.  Resp ¶ 5.

The SEC cites four other statements that Mr. Muraca made to investors regarding the business expenses for which the proceeds from various offerings, investments, and financing were to be used.  *Id.* ¶¶ 7-10.  The statements all refer to the development of kits, for which NMDX purchased assets from Nuclea, and that they were estimated to cost between $300,000 and $350,000.  *See id.*  Mr. Albers admits that NMDX spent approximately $330,000 to acquire those assets.  *Id.* ¶ 71.  Paul Bodin, testified that his firm, Carlsen & Co., funded the acquisition, which he described as a "New York bargain."  *Id.* ¶ 22.

The basis of the SEC's misrepresentation claim is that these statements were deceptive because Mr. Muraca diverted NMDX funds for his personal use and did not inform investors. Br. 7.  The evidence at Mr. Muraca's trial otherwise confirms that NMDX's work is legitimate. As the Government explained, NMDX is a legitimate company that employed scientists working to advance its mission.  Resp. ¶¶ 23-24 (employees in NMDX's Albany lab "were trying to

13

develop a reader and a sensor for NMDX . . . .  The valuable efforts to develop diagnostic tests

for cancer . . . ."); *id.* ¶ 25 ("no dispute that these companies had some real assets.").

Here, a rational fact-finder could find that the statements alleged to be misrepresentations

simply stated the work that NMDX was attempting to perform, and, absent Mr. Muraca allegedly

using money for his personal benefit, they are true and not materially inaccurate.  Thus, with

respect to NMDX, there is a material issue of fact as to whether any statements attributable to it

were material misrepresentations, and the Court should deny the motion on this ground alone.

B.      The SEC's Cursory Calculations and Assumptions Raise Material Issues of Fact

The SEC's claim that Mr. Muraca misused investor funds is supported by little, if any,

admissible evidence.  The Albers Declaration lacks personal knowledge and is hearsay, which is

not admissible evidence supporting judgment as a matter of law.  Albers Decl. ¶ 4; Resp. ¶ 72.

Though Mr. Albers claims "personal knowledge," he relies on other documents (which

are not attached and are only vaguely described), interview statements which Mr. Albers had no

part in (not attached and vaguely described),[6] or, stunningly, "information provided to [him] by

other members of the [SEC] staff," which the SEC prevented Mr. Albers from describing at his

deposition.  Albers Decl. ¶ 5; Resp. ¶ 68.  The Albers Declaration is hearsay or, as to the

interview statements and sundry "information" provided to Mr. Albers, double hearsay.[7]

The source documents and the statements of the "other members" of the SEC that Mr.

Albers relies on and summarizes are better evidence of the assertions made in the Albers

Declaration, except that the information provided by the SEC's attorneys has not been disclosed

---

[6] Mr. Albers does not recall which statements he reviewed or if he reviewed all of them.  Resp. ¶ 28.

[7] Because Mr. Albers has not introduced the documents upon which he relies, they are impossible to authenticate.
Conclusions allegedly derived therefrom should not be considered.  *See Goguen ex rel. Estate of Goguen v. Textron,
Inc.*, 234 F.R.D. 13, 17 (D. Mass. 2006) (striking two exhibits due to improper authentication).

to NMDX.  The Albers Declaration violates both the hearsay and best evidence rules, given that his calculations are used to prove the truth of the matter asserted (that Mr. Muraca diverted the sums for his personal use).  Fed. R. Evid. 802 & 1001.  As explained in *SEC v. Ficken*, a case cited by the SEC, "[h]earsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."  546 F.3d 45, 53 (1st Cir. 2008) (internal quotation omitted).  Mr. Albers's testimony vaguely summarizing documents that he saw and things that he heard would not likely be admitted at trial, and his declaration should not be considered on summary judgment.[8]

Substantively, the Albers Declaration does not add up.  It is a tally of transactions that he assumes, without evidence or inquiry, were not business expenses.  The SEC contends that Mr. Muraca raised "a total of at least $1,175,680 from fifteen investors."  Br. 7.  The SEC does not describe how much of this total was raised for NMDX.  Resp. ¶ 11 (stating aggregate total for NMDX and MetaboRX).[9]  The SEC calculated that $1,002,500 was deposited into NMDX's account, and that some investors sent funds directly to Mr. Muraca.  *Id.* ¶ 27.

Mr. Albers concludes that Mr. Muraca transferred $161,549 in checks from NMDX into his bank account and debited $125,732 for items "including groceries, automotive expenses, restaurants, fast-food, consumer goods (e.g., Cabela's, Coach, Sunglasses USA), ATM withdrawals, and support of his fiancée's restaurant businesses."  Albers Decl. ¶ 10; Resp. ¶¶ 12, 31.  He also found expenses for "gas, groceries, and other items," and an unknown number of checks to Mr. Muraca with a memo stating "expenses."  Albers Decl. ¶¶ 10, 15.

---

[8] Mr. Albers admits that he and the SEC, "have the bank records themselves."  Resp. ¶ 29.  The SEC could have attached the relevant portions as exhibits to be authenticated.  Instead, it chose to submit a hearsay "summary."

[9] The SEC's statement of undisputed facts insufficiently supports this fact with a citation to paragraph 9 of the Complaint.  *Id.* ¶ 11.

Mr. Albers's calculations are set forth on a summary sheet, without any explanation of its origin or authentication.  The cited total of $161,549 transferred from NMDX to Mr. Muraca contains a note that the total "includes $8,000 where Muraca made a bank check payable to himself, but we can't tell where he deposited it or cashed it."  Albers Decl. Ex. 3.  There is no evidence that Mr. Muraca received this $8,000.  Mr. Albers made no inquiry or determination as to whether any portion of the $161,549 was for business expenses.  Resp. ¶ 12.

As to the $125,732, Mr. Albers used his "judgment" to identify expenses that he believed were "likely not business expenses," but he admits that he has no way to know whether the cash withdrawals and unlabeled checks were business expenses, and he did not bother to inquire. *Id.*  ¶¶ 33, 39, 43, 45.  Mr. Albers acknowledges that Mr. Muraca had an agreement for a salary of $4,000 per month, but did not subtract this amount from the figure that the SEC contends Mr. Muraca spent for his personal benefit or otherwise credit it as a legitimate business expense. *Id.* ¶ 41.  Mr. Albers also did not analyze whether automotive expenses in excess of Mr. Muraca's $1,000 per month allowance were business expenses.  *Id.* ¶ 42.  The SEC's counsel prohibited Mr. Albers from explaining how these amounts were determined to be illegitimate, and the SEC should not be heard to explain on reply.  *Id.* ¶ 69.

The SEC has failed to account for certain deposits or reimbursements.  Specifically:

- Mr. Muraca endorsed and deposited an $8,500 check into NMDX's account.  *Id.* ¶ 38.

- Deposits were made into the NMDX account and are listed in the bank records with attribution to a source, *id.* ¶ 39, but Mr. Albers ignored the possibility that Mr. Muraca made these deposits or that they were reimbursements to the company.

- Mr. Muraca's fiancée deposited a check for $200 into the NMDX account.  *Id.* ¶ 40.

16

There also exist disputed facts as to the $411,684 that Mr. Muraca "diverted." *Id.* ¶ 12.
The Albers Declaration concludes that Mr. Muraca paid for operations of Sullivan Station, a
restaurant leased by Mr. Muraca's fiancée. Albers Decl. ¶ 21;[10] Resp. ¶ 35. Evidence shows that
Mr. Muraca "had an office in the back [of Sullivan Station]" that contained a computer, and that
employees attended meetings there. Resp. ¶ 36-37. A fact-finder could determine that payments
to the landlord, the only payments specifically attributed to NMDX, were business expenses.

The SEC relies on an inadmissible summary and hearsay that fail to establish a *prima
facie* case of fraud. There also remain disputes of material fact as to whether the funds that Mr.
Muraca spent were legitimate expenses. These issues require denial of the SEC's motion.

## V.   THE SEC SEEKS AN UNWARRANTED PENALTY AGAINST NMDX

### A.   No Permanent Injunction Is Warranted against NMDX

A permanent injunction is not warranted against NMDX. *First*, summary judgment is not
warranted against NMDX. *Second*, the cases cited by the SEC explain that an injunction is
warranted "if the defendant's conduct indicates that there is a reasonable likelihood of further
violations." Br. 12. NMDX removed Mr. Muraca as CEO in January 2017, replaced him with
Andrew Deck and a board of managers, and has suspended his voting rights in NMDX.
Resp. ¶¶ 61-62. Further violations are unlikely and no basis for a permanent injunction.

### B.   NMDX Should Not Be Fined or Ordered to Disgorge Funds that It Does Not Have

Despite supposedly seeking to vindicate the interests of NMDX's investors, the SEC also
asks the Court to impose joint and several liability on NMDX for $411,684, plus interest, that it
claims Mr. Muraca took from NMDX and MetaboRX. Br. 12-14. The SEC seeks a penalty of

---

[10] Mr. Albers again only includes a total figure from the "Nano and Metabo" accounts, but the Albers Declaration
appears to claim that $20,000 (four payments of $5,000) came from the "Nano account." *Id.*

almost $2 million against NMDX.  *Id.* at 15.  As the SEC explains, disgorgement forces a "defendant to give up the amount by which he was unjustly enriched."  Br. 12.  There is no straight-faced argument that NMDX was unjustly enriched by Mr. Muraca's personal use of funds.  NMDX does not have this money, and never had the money that Mr. Muraca took from MetaboRX.[11]

### 1.   Disgorgement Is Not Warranted on this Record

"'The Court has broad discretion not only in determining whether or not to order disgorgement but also in calculating the amount to be disgorged.'"  *SEC v. Druffner*, 802 F. Supp. 2d 293, 297 (D. Mass. 2011) (quoting *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1474–75 (2d Cir. 1996)).  The Court should decline to order disgorgement or prejudgment interest against NMDX for the loss that NMDX suffered, especially for the period of the 11-month stay.

The SEC cites *SEC v. Esposito*, 2018 WL 2012688 (D. Mass. Apr. 30, 2018), which imposed joint and several liability where violations were "closely intertwined."  Br. 13.  The violations in *Esposito* differ from those alleged here.  Both defendants in *Esposito* participated in and furthered the scheme to defraud.  *Esposito*, 2018 WL at *4.  The SEC makes no such claim against NMDX.  The SEC admits that any fraud was Mr. Muraca's, and was *ultra vires*.

The SEC also cites *SEC v. StratoComm Corp.*, which imposed joint and several liability after a corporation raised $4 million from investors and its CEO diverted $400,000 for his own use.  *StratoComm Corp.*, 89 F. Supp. 3d 357, 369 (N.D.N.Y. 2015).  In that case, the parties did not dispute the loss amount, and the defendants did not challenge "the application of the joint and several liability principles . . ."  *Id.* at 361-62 & 368.  Other than Mr. Muraca's actions, the SEC admits that there is no proof of any wrongdoing by NMDX.  Resp. ¶ 46.  *StratoComm*

---

[11] The FBI seized the funds that NMDX had in its bank account after Mr. Muraca's arrest.

*Corp.* is inapposite, and the Court should not order NMDX to disgorge funds, sparing the company additional losses.

Disgorgement or a fine would punish NMDX's investors because the judgment that the SEC seeks would require NMDX to liquidate its assets or seek additional investment.  As part of a corporate restructuring of NMDX, the equity holders had the opportunity to continue as investors or have their equity repurchased at the original price, and all but two decided to retain their equity and are still equity holders in NMDX.  *Id.* ¶¶ 63-64.[12]  These equity holders have already absorbed the original loss incurred by Mr. Muraca's acts and should not be forced to absorb a second, equal or greater loss through disgorgement, penalties, and interest.  *See SEC v. Sargent*, 329 F. 3d 34, 41 (1st Cir. 2003).  This is especially so in light of the 11-month stay.  *See SEC v. Syndicated Food Serv. Int'l, Inc.*, 2014 WL 2884578, at *15 (E.D.N.Y. Feb. 14, 2014), (making defendant "pay interest for the period of the SEC-requested delays . . . would inequitably burden him with the consequences of the SEC's decisions").  NMDX and its equity holders did no wrong and gained no benefit.  The Court should not order disgorgement.

### 2.      A Civil Penalty Is Not Warranted on this Record

As the SEC notes, a penalty seeks "to achieve the dual goals of punishment of the individual violator and deterrence of future violations."  Br. 14; *SEC v. Eiten*, 2014 WL 4965102, at *2 (D. Mass. Sept. 30, 2014).  Fining NMDX achieves neither aim.  The individual violator is Mr. Muraca, and his removal from management deters any future violations.

The factors that courts consider in setting a penalty do not support penalizing NMDX:

(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was

---

[12]  The trial testimony indicates that one possible shareholder, Leif Hamoe, did not have this opportunity.  *Id.* ¶ 45.

isolated or recurrent; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition.

*SEC v. Milligan*, 436 F. App'x 1, 3 (2d Cir. 2011).

NMDX's conduct has not been shown to have been egregious: it used investor funds for legitimate purposes and suffered losses due to Mr. Muraca's conduct. There is no evidence that NMDX, independent of Mr. Muraca, acted with any scienter. NMDX's conduct created no losses to its investors, and even if Mr. Muraca's actions are considered, all of NMDX's members (with the possible exception of one) had the opportunity to eliminate their losses by recovering their investments in the company as part of the restructuring, with only two investors electing to do so.[13] Resp. ¶ 63-64. NMDX's conduct in restructuring the company has ensured that there will not be a recurrence of Mr. Muraca's alleged misuse of funds. *Id.* ¶ 61-62. As for its financial condition, NMDX continues to have no revenue and is funded by its equity holders, further demonstrating why a fine against it is inappropriate. NMDX's financial condition was already allegedly harmed by Mr. Muraca's acts, and there is no reason to increase its losses by adding a fine.

## CONCLUSION

For these reasons, the Court should deny the SEC's motion in its entirety.

---

[13] The SEC's demand for nearly $2,000,000 in fines ($947,130 for each count) against NMDX raises issues of whether the fine is excessive under the Eighth Amendment. U.S. Const. Amend. VIII; *see SEC v. Metter*, 706 F. App'x 699, 703 (2d Cir. 2017); *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

Respectfully submitted,

**NANOMOLECULARDX, LLC**

By its attorneys,

By: /s/ Colin R. Hagan
Colin R. Hagan, BBO No. 684798
David J. Shlansky, BBO No. 565321
SHLANSKY LAW GROUP, LLP
1 Winnisimmet Street
Chelsea, MA 02150
Phone: (617) 497-7200
Fax: (866) 257-9530
E-mail: Colin.Hagan@slglawfirm.com
       David.Shlansky@slglawfirm.com

Date: June 14, 2019

## **<u>CERTIFICATE OF SERVICE</u>**

I, Colin R. Hagan, hereby certify that on June 14, 2019, I served a true and correct copy of the foregoing on all counsel of record via the CM/ECF system.

/s/ Colin R. Hagan
Colin R. Hagan